Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALDO LEYVA, individually, and on behalf of a class of similarly situated individuals,<br><br>              Plaintiff,<br><br>       v.<br><br>NISSAN NORTH AMERICA, INC., a California Corporation,<br><br>              Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California's Consumers Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act<br>(5)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

1      1.     Plaintiff Waldo Leyva("Plaintiff") brings this action for himself and

2    on behalf of all persons in the United States who purchased or leased any 2012-

3    2017 Nissan Sentra equipped with an Xtronic Continuously Variable

4    Transmission ("Class Vehicles") designed, manufactured, marketed, distributed,

5    sold, warranted, and/or serviced by Nissan North America, Inc. and Nissan

6    Motor Company, Ltd. ("Nissan" or "Defendant"). Plaintiff alleges as follows:

7                         **INTRODUCTION**

8      2.     This is a consumer class action concerning a failure to disclose

9    material facts and a safety concern to consumers.

10      3.     Nissan marketed and sold the Class Vehicles without disclosing that

11    the Class Vehicles' Xtronic Continuously Variable Transmission ("CVT") was

12    prone to premature failure.

13      4.     Specifically, Plaintiff is informed and believes that the temperature

14    of the CVT fluid in the Class Vehicles is controlled by a small cooler attached to

15    the CVT itself, rather than the radiator. The design of the CVT's cooling system

16    makes the transmission unreasonably sensitive to heat. The CVT in every Class

17    Vehicle is thus prone to overheating, which may activate "Fail-Safe Mode"

18    (fluid temperature protection logic mode) and reduce engine performance,

19    among other symptoms.  As a result, drivers may experience conditions ranging

20    from shudders or vibrations to catastrophic transmission failure. (the

21    "Transmission Defect").

22      5.     In addition, Nissan failed to disclose that it equipped the Class

23    Vehicles with cooling systems that are too small to cool the transmission

24    effectively, such that they are prone to malfunctions and premature wear. As a

25    result, Class Members may experience symptoms like loss of power and stalling

26    unexpectedly while driving.

27      6.     The Transmission Defect is inherent in each Class Vehicle and was

28

CLASS ACTION COMPLAINT

present at the time of sale.

7.     Plaintiff is informed and believes that since 2013, if not earlier, Nissan has been aware that the CVT installed in the Class Vehicles is prone to premature failure and that the Class Vehicles' CVT would require frequent repair, yet Nissan continued to install the defective CVT and inadequate cooling system. Moreover, Nissan not only refused to disclose the problem to consumers, but it also actively concealed, and continues to conceal, its knowledge concerning the defective cooling system and prematurely wearing CVT.

8.     Nissan undertook affirmative measures to conceal failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") issued to its authorized repair facilities.

9.     Although Nissan was sufficiently aware of the CVT Defect from pre-production testing, design failure mode analysis, and customer complaints made to dealers, all this knowledge and information was exclusively in the possession of Nissan and its network of dealers and, therefore, unavailable to consumers.

10.     As a result of Nissan's failure to disclose the fact that the CVT installed in the Class Vehicles is prone to overheating, consumers incur significant and unexpected repair costs. Nissan's omission at the time of purchase of the CVT's marked tendency to fail prematurely is material because no reasonable consumer expects to spend hundreds, if not thousands, of dollars to repair or replace essential transmission components in the early years of owning their vehicles.

11.     The CVT Defect is also material to consumers because it presents an unreasonable safety risk. Transmission malfunctions can impair any driver's ability to control his or her vehicle and greatly increase the risk of collision. For example, a Class Vehicle that overheats and malfunctions unexpectedly in traffic

will result in a loss of power, causing the vehicle to slow or stop without warning, endangering not only the Class Vehicle but also those around it.

12.    Defendant's failure to disclose the alleged defect has caused Plaintiff and putative class members to incur costly repairs that have conferred an unjust substantial benefit upon Defendant.

13.    Had Nissan disclosed the CVT Defect to them, Plaintiff and Class Members would not have purchased the Class Vehicles, would have paid less for them, or would have required Nissan to replace the CVT's cooling system or install an external cooler before their warranty periods expired.

## THE PARTIES

**Plaintiff Waldo Leyva**

14.    Plaintiff Waldo Leyva is a California citizen who resides in San Jacinto, California.

15.    On or around April 27, 2015, Plaintiff Leyva purchased a new 2015 Nissan Sentra with a CVT transmission from Pedder Nissan, an authorized Nissan dealer in Hemet, California.

16.    Plaintiff Leyva purchased his Sentra primarily for personal, family, or household use.

17.    Passenger safety and reliability were factors in Plaintiff Leyva's decision to purchase his vehicle.  Before making his purchase, Plaintiff Leyva test drove his vehicle with a dealership salesperson and believed that the Sentra would be a safe and reliable vehicle.  Further, over a period of several years prior to his purchase in April 2015, Plaintiff was exposed to Nissan's advertising campaign, including television commercials that generally depicted Nissan vehicles to be of good quality.  Further, Plaintiff Leyva test drove the vehicle prior to purchase with a salesperson.

18.    Nissan's omissions were material to Plaintiff Leyva. Had Nissan

disclosed its knowledge of the CVT Defect before he purchased his 2015 Sentra, Plaintiff Leyva would have seen and been aware of the disclosures. Furthermore, Plaintiff Leyva would not have purchased his vehicle, or would have not paid the purchase price charged by Nissan, had he known of the CVT Defect.

19.     After purchasing his Sentra, Plaintiff Leyva experienced symptoms of the CVT Defect, including trouble getting up to speed occasionally.  On or around March 10, 2017, with approximately 64,450 miles on the odometer, Plaintiff Leyva took his vehicle back to Pedder Nissan in Hemet because the check engine light came on. The transmission failed during a test drive by the service technician, who informed Plaintiff Leyva that he needed a new transmission. Plaintiff Leyva's deductible for the repair was $100.

20.     At all times, Plaintiff Leyva, like all Class Members, has driven his Sentra in a manner both foreseeable and in which it was intended to be used.

**Defendant**

21.     Defendant Nissan North America, Inc. is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. On information and belief, at all relevant times herein, Nissan North America, Inc. was engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in California and throughout the United States of America.

22.     At all relevant times, Defendant was and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in Los Angeles County and throughout the United States of America.

### JURISDICTION

23.     This is a class action.

24.     Members of the proposed Class are citizens of states different from the home state of Defendant.

25.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

26.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

**VENUE**

27.     Nissan, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff Leyva resides in the County of Riverside, California, and In addition, Plaintiff Leyva's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Riverside County, California.  It is attached as Exhibit 1.

**FACTUAL ALLEGATIONS**

29.     Nissan is known throughout the United States as a major manufacturer of automobiles and related products, which are sold under the Nissan brand.

30.     Nissan designed, manufactured, imported, distributed, and marketed the Class Vehicles in the United States, including California.  Nissan also provides maintenance services for the Class Vehicles through its nationwide network of authorized dealers and service providers.

31.     The CVT is an automatic transmission that uses two variable-diameter pulleys with a steel belt running between them to change speed, instead

of a gearbox and clutch system.  Rather than relying on the fixed gear ratios of the traditional automatic transmission, the pulleys can adjust their width to make the belt turn faster or slower, depending on the speed of the vehicle and the torque needed. The CVT thus "simultaneously adjusts the diameter of the 'drive pulley' that transmits torque from the engine and the 'driven pulley' that transfers torque to the wheels" to allow for an infinite number of gear ratios.[1]  In theory, the CVT chooses the gear ratio optimum for driving conditions.

32.     The CVT, offering more efficient power delivery and better fuel economy, is standard in the Class Vehicles.

33.     The illustration in figure one, below, depicts the way the CVT's belt and pulley system adjusts the gear ration to change speed:



*Figure one – Xtronic CVT belt and pulley system*

34.     Plaintiff is informed and believes that CVT fluid is cooled using a water-to-oil cooler that is insufficient in driving conditions a reasonable consumer would consider normal.

---

[1] Nissan Motor Corporation, *XTRONIC CVT*, http://www.nissan-global.com/EN/TECHNOLOGY/OVERVIEW/cvt.html.

35.     The illustration in figure two, below, depicts the process of heat exchange through the CVT's cooler.



*Figure two – heat exchange through water-to-oil cooler in CVT.*

36.     Consumers complain that their vehicles take an inordinately long time to accelerate from a stop or low speed and shudder and shake or make a loud clunking or knocking sound when the CVT finally selects the appropriate gear ratio. Consumers also frequently complain of unusually high RPMs or a loud whining once they achieve speed and which exceeds their reasonable expectations for noise from the CVT. Finally, in addition to hesitations, slow response, and loud noises, the lifespan of the CVT in the Class Vehicles is unreasonably short.

37.     Plaintiff is informed and believes that the Class Vehicles' CVT is prone to fail unexpectedly due, in part, to an inadequate cooling system, despite being prefabricated with the mounting holes necessary for an external cooler, *supra*. Because the CVT's fluid heats quickly beyond the narrow range of temperatures specified in the Class Vehicles, the CVT malfunctions without warning, which increases the risk of accidents by impairing drivers' control.

38.     The CVT Defect alleged is inherent in and the same for all Class

Vehicles.

39.    On information and belief, dating back to at least 2007, Nissan was aware of the defects of the CVT's cooling system but failed to disclose them to consumers. As a result of this failure, Plaintiff and Class Members have been damaged.

### The CVT Defect Poses an Unreasonable Safety Hazard

40.    The CVT Defect poses an unreasonable safety hazard. Hesitations, slow responses, or catastrophic transmission failure impair drivers' control over their vehicles, which significantly increases the risk of accidents.

41.    Many purchasers and lessees of the Class Vehicles have experienced problems with the CVT.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendant's awareness of the problems with the CVT and its cooling system, including how dangerous they are for drivers.  The following are some safety complaints relating to the CVT Defect (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (November 2017).

**2012 Nissan Sentra**

a. 09/05/2012 Upon accelerating after first starting and going about half a mile car makes a clunking noise like you have ran over something even though you haven't. Does this all the time after first starting and taking off…..*TR

b. 09/04/2013 Summer 2013 ,while driving on the freeway at 60 mph, some tire debris off an 18 wheeler truck tire was on my lane,, [T]o avoid hitting it and or the vehicles next to me I looked into my rear view mirror to check for cars behind me and made a sudden slow down, but not a complete stop,,I pressed the gas pedal to go around the debris and the engine revved up, but the car did not move. It took the CVT transmission several seconds to catch up to the engine, before the car started to move again..I told a service manager at IPOC Nissan dealer in San Antonio about this and he seemed to brush it aside, stating those things happens with CVT's. What the dealer did find was

an engine oil leak between the transmission and engine, you can't really see the oil leak, but the fact that dust collects around it indicated and the rest of the underside is cleaner. The dealer had to remove the transmission, parts connected to it,,front axle etc..the flywheel to replace a defective rear engine main oil seal. This was at about 7000 miles into this new Nissan Sentra. Also I have made countless complaints to Nissan and it's dealer of the horrible knocking from the engine (2.0) on start ups. And somewhat gets quieter after warmup, but is still present at about 2000 rpm and up.. Nissan has time after time refuses [sic] to accept that they have a mechanical product defect, instead they claim the knocking is coming from their fuel injectors, to the ABS brakes systems,,to the trunk lid..These are the excuses they have told me. I would not like to pass on these problems to some other person if I get rid of this new car,,what I would like Nissan to do is make good on their product, [T]heir advertising on tv, radio, and other media is deceiving and Nissan is trying to avoid having to fix their problems. The problem with the stop and go on the CVT happened again and I reported it to the dealer . *JB

c.  10/17/2013 During acceleration the vehicle makes a loud clunk that is not only heard but felt on the floor under your feet. *TR

d.  10/22/2016 Vehicle has trouble accelerating and while accelerating its began making noises with the transmission after going 70 mph or more. At times it shakes as I begin accelerating. I just bought this vehivle [sic] and it has only 46000 miles.

e.  06/23/2014 Upon accelerating the car makes a awful clunking noise that is not only heard but felt on the floor under your feet[. T]his happens often. The dealer stated this was normal. I pressed the gas pedal while switching lanes and the engine revved up, but the car did not move. It took the transmission several seconds to catch up to the engine. *TR

f.  07/12/2014 I bought a 2012 Nissan Sentra[.] I kept up with all the work for the car so to be sure nothing would go wrong. About a year the car started making noise. I told the service dept. but they did nothing[.] On 07-10-2012 the service dept told me I needed a  new transmission[.] The car is only two years old. The car began to run really bad. I had to get another car for fear that this might blow up. *TR

g.  09/03/2014 I was driving my Nissan Sentra and without warning the transmission failed in the middle of the street. It failed at 66,000 miles and the warranty expired at 60,000 miles[.] I received no help from Nissan or the dealer[.] They both could care less about the situation[.] It was a awful experience[.] I bought the car because i thought it was reliable[.] I will never buy Nissan again[.] It has been a bad experience[.] So long Nissan. *TR

h.  09/17/2014 Was driving on freeway, accelerating toward 70 mph. Accelerator dropped away from under my foot, tachometer "pegged" 5000 rpm. Quick scan of instrument panel showed car was now in neutral, not drive. My hands were both on the steering wheel; I didn't touch the gearshift lever. The car shifted on its own. This started a

series of problems with the transmission that continue to escalate; transmission will override braking (caused 2 accidents 2 weeks apart); on a 500-mile (1way) business trip in July, car went into FAIL-SAFE mode 3 times - loss of power, accelerator non-functional.  Car taken off the road by Nissan Corp, but no repairs done; after 49 days out of service, car was released to me, continues to exhibit transmission problems. […] When transmission overrides brakes, it feels like the car is being pushed, then chokes down (nose of car dips), then is catapulted in the same direction (D or R); in this sequence, brakes fully applied will not stop the car. Nissan's only response is to self-protect against a lawsuit; no concern for the welfare of someone driving a car in this condition! *TR

i.   12/06/2014 Since purchasing the car new in 2012 upon accelerating after first starting and going about half a mile car makes a clunking noise. Does this all the time after first starting and taking off and can be felt under the driver's side floorboard when it happens. The dealership took it for a test ride and said it is normal in Sentra models, but they never checked the bushings to diagnose the source of the problem. It could be in the suspension, transmission, or the drive train. *TR

j.   04/17/2015 TL* The contact owns a 2012 Nisssan [sic] Sentra. While driving at approximately 60 mph, the transmission failed while accelerating. The Check Engine warning light illuminated. The vehicle was towed to a dealer where it was diagnosed that the transmission needed to be replaced. The vehicle was not repaired. the manufacturer was made aware of the failure. The failure mileage was 63,383.

k.   07/14/2015 TL* The contact owns a 2012 Nissan Sentra. While driving at 45 mph, the vehicle stalled without warning. The vehicle was towed to the dealer where it was diagnosed that the transmission failed and needed to be replaced. the vehicle was not repaired. The manufacturer was made aware of the failure. The failure mileage was 68,000.

l.   07/27/2015 When coming to a complete stop and accelarating [sic] less than 1/4 mile after stopping the vehicle lost power and I had to quickly pull to the side of the road. I turned the vehicle off after stopping and tried to start again, and it just turned over but wouldn't stay started. After about 3 minutes I turned the ac off and tried to start the vehicle again and it started. Now I am afraid that this will happen again and I have lost confidence in it's safety. My used car warranty has expired and I am not able to have the car checked. It's been about a week now and I have not had it happen again. However, now the low tire pressure light has come on and I will have to have that checked. I heard that these problems has [sic] happened other 2012 Nissan Sentras, but there is no recalled as of yet.

m.  09/12/2015 I have had my car for just over 2 years. I bought it used for business trips mostly. I drove it for the first time on a long distance business trip and 3 hours into trip it stopped accelerating over 70 miles an hour. This continueed [sic] the entire way to my final destination. No lights came on, no sounds or smells either. Once I was in town

driving on normal roads it was fine again. Then I drove it back home, same thing happened but more extreme. I took it to the Nissan dealership in Boulder Colorado. In doing so I found out that all Nissans had a warrenty [sic] recall to put in a CVT cooler part. A feature that all Nissans need to insure the possibilty of long distance travel without the transmission over heating and not accelerating properly. The dealership then informed me that it would have been covered if I had brought it in before it was over 60,000 miles. Now that it is howevr [sic], it is my responsibility to pay over $800 for a part my car should have come with. I called Nissan Noth [sic] America to find resolution [sic], they closed the case and will not help me. I find this extremely unexceptable [sic] and dangerous. As a single 31 yr old woman, I could have been stranded in corn fields in the middle of Kansas in the dark had my transmission failed unexpectedly. I purchased this car at 40,000 miles two yrs ago, it should have had that part put in before it left the lot. I will not accept this and am hoping to find some support in getting Nissan to cover parts and labor for this issue. Please let me know your thoughts and how I should proceed from here. Thank you.

n. 09/14/2015 TL* The contact owns a 2012 Nissan Sentra. The contact stated that while driving at approximately 85 mph, the vehicle failed to shift and the speed independently decreased to 70 mph without warning. The vehicle was restarted; however, the failure recurred. The contact stated that the failure recurred each time the vehicle was driven a long distance. The vehicle was taken to the dealer where it was diagnosed that the vehicle needed a CVT cooler installed. The vehicle was not repaired. The manufacturer was made aware of the failure. The approximate failure mileage was 60,000.

o. 11/13/2015 I was driving through town and was at a stop light when my car would not accelerate at all. No warning signs. No Check Engine light. It just wouldn't go. Took my car to the Nissan dealer and was advised the transmission has to be replaced. Nissan refuses to assist with any of the cost. It's an automatic CVT transmission.

p. 03/04/2016 I stopped at a stop sign and then was not able to move. Tried then going backwards and nothing. I was able to drift forward. However no acceleration. No warning signs, car has been working correctly since purchased. The car is was [sic] purchased in Nov of 2011, this happened 3/3/16 less then 65,000 miles. I have the car maintained regularly by only the dealership where I purchased it from brand new. Only issue I have ever had with the car was being advised while maintence that the battery was reading dead in the car so they replaced it. I called the dealership and they said it sounds like a transmission problem and I'm over the 60,000 mile warranty.

q. 03/04/2016 Bought the car certified used from a Nissan dealership w/ roughly 55k miles on it, CVT transmission fails, have it replaced. The new CVT transmission fails again with roughly 55k miles on. Nissan refuses to offer any assistance to help with replacing a CVT transmission that yet again has failed.

r. 04/07/2016 At 50k miles after four hours driving at 70mph the car lost power, rpm not moving at all when accelerating. At 67k miles, the car

1    lost power again after driving 3 hours, got code P0744 from scanner. Car would only 50-60 mph.

2

s.  05/15/2016 On May the 12th 2016 I was in the Nissan with my mother and sister on our way to Hemet California from our home in Lancaster. On Highway 138 I began to hear a weird noise coming from the engine. I also noticed that I was not going as fast as i should have been up a hill. I pulled over, turned the car off and looked under the hood. I checked the oil, water, and it all looked fine. I went back in the car and continued my route. I got on the 10 Freeway and everything was good. No Traffic and I'm driving 55 miles an hour. I push the gas pedal to go faster and nothing happened. That is when I saw that the Check Engine light was on. The car had started to slow down. I pushed the gas pedal a few more times and when nothing happened I started to panic. I get over to get off of the freeway and now my speed is about 40mph. Cars are merging on the freeway behind me going at least 60. I was so afraid they were going to hit me. I safely got off of the freeway at North University St in Redlands CA. I stopped the car on Lytle St. I turned off the engine and opened the hood and it was hot and smoking. I sat there for 30 minutes with my family calling DRIVETIME and AEVEREX the warrenty [sic] provider. I was so scared and confused. AEVEREX told me that they work with Pep Boys and I may be covered on getting it fixed. With one Pep Boys being just 7 minutes away. I started the car and drove there with the Check Engine light still on. I didn't not [sic] leave my key with Pep Boys on that day because I was confused on the way AEVEREX worked. Pep Boys of Redlands received my key on 5/14/2016 and I got a call later that day from Steve who helped me saying that the car needs a new transmission. I would like to know how DRIVETIME completely missed that this car needed a new transmission. I only had it for 6 days!!!!!

t.  07/21/2016 About halfway through a highway road trip from Dallas to Houston, my vehicle began automatically decelerating from 85mph to 70mph although my foot pressed hard on the accelerator. I activated cruise control at 70mph, but the vehicle continued to decelerate although cruise control was activated and displayed beneath the speedometer. When the car's speed dropped from 70mph to 60mph on the highway, I took the nearest exit in Centerville, Texas and stopped at the gas station to turn my car off then on again. The car continued to decelerate, reaching only 45mph as I entered the busy highway yet again. After 15 minutes, the car began accelerating to 60mph. After struggling with the car's speed for about 30 minutes, everything returned to normal and the car began accelerating to 85mph once again.

u.  08/22/2016 Vehicle refused to accelerate during prolonged uphill drive in 95f+ weather. Vehicle speed was reduced to below 50 mph and no amount of accelerator depressing increased speed or acceleration. Vehicle had to be pulled over for 10 minutes before it would accelerate normally again. No notice of engine overheat or malfunction was registered on the the [sic] dash. No indicators visible.

v.  08/27/2016 Takata recall. The issue I'm having with my Nissan Sentra 2012 is an ongoing issue for awhile now. Traveling up to NV from

CA, when I reached a certain hill of a slight altitude decrease my speed automatically from going 80mph to 50mph on the hwy. Even pushing the pedal to the metal, doesn't do any impact at all. Had to pull over and wait 30mins for car to rest and then it went back to normal. Even with doing a oil change and transmission flush, problem still occurs. Contacting the dealership didn't help because my warranty just recently went out with nothing they could do. Talk about my luck! Please help. I take very good care of my vehicle and this is the outcome I get?

w. 10/22/2016 Vehicle has trouble accelerating and while accelerating its began making noises with the transmission after going 70 mph or more. At times it shakes as I begin accelerating. I just bought this vehivle [sic] and it has only 46000 miles.

**2013 Nissan Sentra**

x. 10/31/2012 TL* The contact owns a 2013 Nissan Sentra. The contact stated that while traveling 35mph, the vehicle suddenly stalled without warning. The contact was able to merge to the side of the road to restart the vehicle. The vehicle then began to function normally. The vehicle was able to be driven to the dealer where the failure could not be replicated. The vehicle was not repaired. The manufacturer was not contacted about the failure. The failure mileage was 419 and the current mileage was unavailable.

y. 03/09/2013 I was waiting at a red light to make a left turn. Once the light turned green and I stepped on the accelerator, the car started to jerk and lost power. It did not turn completely off but it would not drive. I had to put my hazard lights on to avoid being rear ended by the vehicle directly behind me that was also making a left turn. I owned the car for less than 24 hours at that point. It only had 152 miles on the odometer. The dealership sent a tow. The diagnosis was that the software needed to be updated. I don't understand how Nissan can sell a car that isn't properly programmed? Why wasn't the programming checked prior to me driving it off the lot? I will drive it for a few days to see if it happens again. *TR

z. 03/29/2013 I purchase this as a brand new vehicle last month from a Nissan dealer. Today morning when I left home at 5:40am the temperature was around 25F and when I switched on the car and pulled it to the Drive mode suddenly the engine stopped by itself. I then pulled it back in the Parking gear and reigned [sic] the engine and left home. I reached outside my house stopped to take a left turn and the car stopped again! I feel scared driving this car now on freeway as I feel it may stop anytime and I might get into a big crash. There is a recall letter I received on this car yesterday and it said the first problem I stated above when the car is moved from P to D sometimes it stops but not that it would ever stop while in motion which is very very scary. I hope you will be able to help me and any other owners of this car. Thanks. *TR

aa. 04/30/2013 I was traveling on the interstate on 4/6 headed to SC at 5 am when the car started to decelerate by itself. With the gas pedal to the floor the car would not go past 45. Then suddenly it will take off.

The car does this at random and it cannot be detected on the computer according to Nissan. Friday night the car did the same thing. This time was worst and I was in traffic with people behind me. As I started to pull off from the light the car would not go past 25. I immediately put the flashers on prayed that I did not get hit from behind. I am afraid to drive the car and i am currently paying for a rental because Nissan Lithia Springs refused to give me a rental or loaner. I am very distressed about this car. Nissan Lithia Springs said they would trade me out the car but wanted to treat it as a trade. Why would I pay for two cars when my Sentra is obviously a lemon. I am otally [sic] frustrated I have a brand new car that I cannot drive and know one seems to care. The car was purchased on 3/18. Went to service 4/8 picked up 4/9 they said that it was a idle program. Returned to service 4/11 and was picked up 4/24. I took the car back on 4/26 and it is still there. I have tried contacting Nissan consumer affairs and they don't return phone calls or emails.

bb. 09/09/2013 1st incident with our new 2013 Nissan Sentra occurred @ 247 mi., in our possession less than 1 week, going 50mph (2 children in car with me), car just shut off. Dealer reset computer system. It has been down hill since, I took it in today for the 5th time since it was purchased 3.5 months ago (it now has 3700mi). Repeated issues with rpm's running high anywhere between 2,000 & 4,000 or at an all most stop will flutter down to 0 like it's going to stall. […] There is now growling noises coming from front, car seems to "buck" around 24k rpm's. Oh yeah my driver door handle is now falling apart. Did I cover all the problems I have had with a $20+ brand new car???? I think so, but then again we haven't owned it all that long! I did open a claim with Nissan consumer affairs when it was in on it's 3rd visit, I was denied a repurchase, but rest assured a Nissan certified repair shop will fix any problems. Waiting on dealership to decide if they can do anything?! Next step attorney!!!!! *TR

cc. 11/20/2013 TL* The contact owns a 2013 Nissan Sentra. The contact stated that when accelerating from a complete stop, there was a significant delay in acceleration response. In addition, the vehicle decelerated without warning when driving at various speeds. The failure recurred numerous times. The vehicle was taken to an authorized dealer for diagnosis. The technician was unable to duplicate the problem. The manufacturer was notified of the defect. The approximate failure mileage was 770. Updated 12/24/13*CN The consumer stated on two occasions, the vehicle lost power, and it would not accelerate.

dd. 01/01/2014 I only had my car for about 10 months. I keep my car updated with the maintenance. I drove to Las Vegas, Nevada Friday afternoon. My car was running great I get to Las Vegas Nevada I here [sic] this loud grinding crinkly noise coming from my engine and transmission. I take it to Planet Nissan in Las Vegas Nevada. They took forever to even take me as a customer. Then they come out and say you are not eligible for a rental and your transmission went out. They proceeded to tell me that I will be responsible for the car as far as picking it up when its fixed. This is the worst experience I had with cars. This is the third time something bad happens to this car and its supposed to be brand new. I bought it with 32 miles on it. Mind you

all this was on a trip I took to Vegas with my family. My two year old son was drained from this experience having to spend 6 hours at Planet Nissan. They even try selling me a another new Sentra.

ee. 01/09/2014 TL* The contact owns a 2013 Nissan Sentra. The contact stated that while driving 65 mph, the vehicle began to lose power. The vehicle was taken to the dealer for inspection where they stated that the transmission needed to be replaced. The vehicle was not repaired. The manufacturer was notified of the failure. The failure mileage was 7,007. ..Updated 020414 *BF

ff. 02/23/2014 Engine stalled on the interstate while traveling at 70 mph. Stalled again about an hour later at 30 mph. Went to dealership, they were unable to reproduce the issue. Others have had similar experiences, but Nissan will not recognize engine stalls as a current issue with 2013 Nissan Sentras. However Nissan did send me one months car note for the vehicle being in the shop several times for this problem. According to Nissan there is a suggested repair involving the accelerator on these vehicles, but the company will not authorize the repair unless their technicians can reproduce the issue. After several calls to Nissan they simply say that they understand the problem i am having but the company will not authorize the repair at this time. They more or less left it to me to continue with my own research about a potential recall involving engine stalls. *TR

gg. 03/28/2014 This vehicle was purchased on 12/31/2013, with 22 miles showing on the odometer. Approximately two weeks later, while at a stop light, the car engine cuts off, I was able to put the car into park and restart without further problem. The engine has stopped three other times since then, the others were while idling and driving at approximately 2530mph. I should have taken it back to the dealer after the first incident, but thought it was a fluke, but after the fourth time, i'm a bit afraid that this will continue to happen and probably cause an accident.How do I begin to resolve this problem with Nissan? *TR

hh. 05/08/2014 TL* The contact owns a 2013 Nissan Sentra. The contact stated while driving at various speeds, the vehicle suddenly failed to accelerate. The vehicle was taken to the dealer who stated that they could not duplicate the failure. The vehicle was not repaired. The manufacturer was not made aware of the failure. The failure mileage was 18,000.

ii. 06/29/2014 I was turning and drove thru a intersection that is when my car stalled out. I have taken it to the dealer ship and been told that there is nothing wrong with the car. Two weeks later the same thing happened and once again took it back into the dealership. I just got it back on Friday and what do you know the car keeps acting like it is going to stall out. Don't get me wrong the people at the dealership are nice, but after my Google search today I am glad (not really glad sad to see this is a problem but I thought I was going to crazy trying to figure out why) to see that others are having the same exact problem so when I go in tomorrow I have several things to talk to Nissan about. I just hope that with these issues something is done before someone gets hurt. I shouldn't be scared to take my kids places in my car. *TR

jj. 07/23/2014 Purchased the car in November 2013, driving the highway, as we exit the highway, we had to stop for the red light, once the light change to green, hit the green pedal and the car would not move. had to think quickly so I shut car off, then turned it back on, pressed the gas pedal, but there was no get up and go. The car crept very slowly. Was able to make it across the road to the gas station, turned the car off allowed it to set for 15 minutes turned car back on still was driving at less than 20 miles per hour. Car was done, there was a hotel the street from the gas station was able to push it over there. knew we had to figure out what to do. Called Trip A to have the car towed to Faulkner Nissan on Paxton St. in Harrisburg PA since it was after 5pm on a Saturday, they were closed, and closed all day on Sunday. Had to get a cab to the Harrisburg airport to get a rental car, no way to get back home or to work. Paid 355.00 for a 7 day rental. Received a called from Faulkner Nissan Monday after having a service technician check it, he said the transmission died. Brand new car, Faulkner wants to replace it with a rebuilt transmission, questions is will that one break down on me as well. Today is Wednesday, July 23rd, 2014, still no word on the status of car. *TR

kk. 10/24/2014 TL* The contact owns a 2013 Nissan Sentra. The contact stated while driving approximately 30 mph, there was a sudden increase in engine rpms as the vehicle shook abnormally and stalled without warning. The vehicle was restarted but the failure recurred multiple times. The vehicle was taken to a dealer multiple times for a diagnosis. The technician was unable to locate a problem and stated that the failures were normal. The manufacturer was notified of the failure and did not offer any further assistance. The failure mileage was 3,700.

ll. 11/24/2014 Vehicle turns off by itself while driving, transmission needs to be replaced,and a lot of issues with the engine. *TR

mm. 12/12/2014 TL* The contact owns a 2013 Nissan Sentra. While driving approximately 65 mph, the vehicle stalled. In addition, the vehicle failed to accelerate without warning. The vehicle was not diagnosed or repaired. The manufacturer was notified of the failure. The failure mileage was 65.

nn. 01/08/2015 TL* The contact owns a 2013 Nissan Sentra. The contact stated that while driving at 40 mph, the vehicle stalled without warning. The contact was unable to restart the vehicle. The vehicle was towed to a dealer. The technician diagnosed that the ecm needed to be updated. the vehicle was repaired; however, the failure recurred. The manufacturer was notified of the failure. The failure mileage was 16,000.

oo. 03/01/2015 As I was driving my car began to jerk. I could not gain any speed and almost cause two accidents because of the way it jerked. *TR

pp. 06/27/2015 While driving the vehicle, the accelerator pedal can suddenly become unresponsive, causing the vehicle to lose speed and the engine to slow or nearly stall. This happens frequently when driving, at all speeds from a standing stop to highway speed. This issue

CLASS ACTION COMPLAINT

sounds very similar to the recall for 908,000 Nissan vehicles for accelerator pedal problems in early 2013. I think that recall needs to be expanded to Nissan models sold in the USA. I have had the car in for service at my local Nissan dealership twice for this issue so far, and the problem has not been corrected.

**Nissan Had Superior and Exclusive Knowledge of the CVT Defect**

42.     Nissan had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

43.     Plaintiff is informed and believes and based thereon allege that before Plaintiff purchased his respective Class Vehicles, and since 2007, Nissan knew about the CVT Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to Nissan and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Nissan dealers about the problem.

44.     Nissan is experienced in the design and manufacture of consumer vehicles. As experienced manufactures, Nissan conducts tests, including pre-sale durability testing, on incoming components, including the Xtronic CVT, to verify the parts are free from defect and align with Nissan's specifications.[2] Thus, Nissan knew or should have known the CVT was defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

45.     Additionally, Defendant should have learned of this widespread defect from the sheer number of reports received from dealerships. Defendant's customer relations department, which interacts with individual dealerships to

---

[2] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed September 11, 2017).

1  identify potential common defects, has received numerous reports regarding the

2  defect, which led to the release of the TSBs. Nissan's customer relations

3  department also collects and analyzes field data including, but not limited to,

4  repair requests made at dealerships, technical reports prepared by engineers who

5  have reviewed vehicles for which warranty coverage is being requested, parts

6  sales reports, and warranty claims data.

7        46.    Defendant's warranty department similarly analyzes and collects

8  data submitted by its dealerships in order to identify trends in its vehicles. It is

9  Defendant's policy that when a repair is made under warranty the dealership

10  must provide Nissan with detailed documentation of the problem and the fix

11  employed to correct it. Dealerships have an incentive to provide detailed

12  information to Defendant, because they will not be reimbursed for any repairs

13  unless the justification is sufficiently detailed.

14        47.    On or around July 6, 2012, Nissan issued TSB NTB12-057

15  regarding the CVT Fail-Safe "condition" in certain vehicles, including the 2007-

16  2011 Sentra. The TSB warned its service technicians that several scenarios could

17  arise that would cause Fail-Safe mode to activate prematurely, including an over-

18  filled fluid reservoir. Technicians were instructed to check the level after the

19  CVT level had reached 70 /158 but before it exceeded 80 /176 , with an

20  accompanying illustration defining it as "hot condition."

21        48.    On or around February 27, 2013, Nissan issued TSB NTB13-001a,

22  notifying its dealers of engine hesitation or stalling at idle or very low speeds in

23  certain 2013 Sentras equipped with either the CVT or a manual transmission.

24  Symptoms included a decrease in RPMs. Service technicians were instructed to

25  reprogram the Engine Control Module ("ECM") and, if necessary, the

26  Transmission Control Module ("TCM"). The TSB also recommended, if

27  necessary, that technicians reprogram the A/T [Automatic Transmission] control

28

CLASS ACTION COMPLAINT

1    unit, which activates Fail-Safe mode.

2         49.    On or around November 5, 2013, Nissan issued TSB NTB10-150a,

3    related to a number of models, including the 2010 Sentra, regarding slower than

4    normal acceleration from a stop. The TSB instructed service technicians to

5    replace the transmission control valve assembly and reprogram the TCM. To

6    assist with diagnosis, the TSB noted that the condition happened more

7    commonly after vehicles had been driven for extended periods at highway

8    speeds.

9         50.    On or around August 15, 2014, Nissan issued TSB NTB13-095a,

10   notifying its dealers of reduced performance due to CVT fluid temperature

11   protection logic (Fail-Safe mode). Applicable to 2007-2012 Sentras, the TSB

12   directed service technicians to install an external CVT cooler to the pre-existing

13   weld nuts on the front of the radiator support. However, despite these repairs,

14   Class Members continued to experience symptoms of the CVT Defect. On or

15   around November 25, 2015, Nissan issued TSB NTB13-095c, which amended

16   the bulletin to include additional repair information.[3]

17        51.    The existence of the CVT Defect is a material fact that a reasonable

18   consumer would consider when deciding whether to purchase or lease a Class

19   Vehicle.  Had Plaintiff and other Class Members known that the Class Vehicles

20   were equipped with transmission subject to premature failure, they would have

21   paid less for the Class Vehicles or would not have purchased or leased them.

22        52.    Reasonable consumers, like Plaintiff, reasonably expect that a

23   vehicle's transmission is safe, will function in a manner that will not pose a

24   safety risk, and is free from defects. Plaintiff and Class Members further

25   reasonably expect that Nissan will not sell or lease vehicles with known safety

26   defects, such as the CVT Defect, and will disclose any such defects to its

27   _____
     [3] On information and belief, TSB NTB13-095b was issued on or around

28   July 9, 2015.

1    consumers when it learns of them. They did not expect Nissan to fail to disclose
2    the CVT Defect to them and to continually deny it.

3    **Nissan Has Actively Concealed the CVT Defect**

4    53.    Despite its knowledge of the CVT Defect in the Class Vehicles,
5    Nissan actively concealed the existence and nature of the defect from Plaintiff
6    and Class Members.  Specifically, Nissan failed to disclose or actively concealed
7    at and after the time of purchase, lease, or repair:

8              (a)    any and all known material defects or material nonconformity
9                     of the Class Vehicles, including the defects pertaining to the
10                    CVT;

11             (b)    that the Class Vehicles, including the CVT, were not in good
12                    in working order, were defective, and were not fit for their
13                    intended purposes; and

14             (c)    that the Class Vehicles and the CVT were defective, despite
15                    the fact that Nissan learned of such defects as early as 2007.

16    54.    When consumers present their Class Vehicles to an authorized
17    Nissan dealer for CVT repairs, rather than repair the problem under warranty,
18    Nissan dealers either inform consumers that their vehicles are functioning
19    properly or conduct repairs that merely mask the CVT Defect.

20    55.    Nissan has caused Plaintiff and Class Members to expend money at
21    its dealerships to diagnose, repair or replace the Class Vehicles' CVT and/or
22    related components, despite Nissan's knowledge of the CVT Defect.

23    **Nissan Has Unjustly Retained A Substantial Benefit**

24    56.    On information and belief, Plaintiff alleges that Defendant
25    unlawfully failed to disclose the alleged defect to induce them and other putative
26    Class Members to purchase or lease the Class Vehicles.

27    57.    Plaintiff alleges further that Defendant thus engaged in deceptive

28

1  acts or practices pertaining to all transactions involving the Class Vehicles,

2  including Plaintiff'.

3      58.    As discussed above, therefore, Plaintiff alleges that Defendant

4  unlawfully induced them to purchase their respective Class Vehicles by

5  concealing a material fact (the defective CVT) and that they would have paid

6  less for the Class Vehicles, or not purchased them at all, had they known of the

7  defect.

8      59.    Accordingly, Defendant's ill-gotten gains, benefits accrued in the

9  form of increased sales and profits resulting from the material omissions that did

10  - and likely will continue to - deceive consumers, should be disgorged.

11                  **CLASS ACTION ALLEGATIONS**

12      60.    Plaintiff brings this lawsuit as a class action on behalf of himself

13  and all others similarly situated as members of the proposed Class pursuant to

14  Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the

15  numerosity, commonality, typicality, adequacy, predominance, and superiority

16  requirements of those provisions.

17      61.    The Class and Sub-Class are defined as:

18

19      **Nationwide Class**:  All individuals in the United States
       who purchased or leased any 2012-2017 Nissan Sentra

20      equipped with an Xtronic CVT (the "Nationwide Class"
       or "Class").

21      **California Sub-Class**:  All members of the Nationwide

22      Class who reside in the State of California.

23      **CLRA Sub-Class**:  All members of the California Sub-
       Class who are "consumers" within the meaning of

24      California Civil Code § 1761(d).

25      **Implied Warranty Sub-Class**:  All members of the
       Nationwide Class who purchased or leased their vehicles

26      in the State of California.

27      62.    Excluded from the Class and Sub-Classes are:  (1) Defendant, any

28

entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

63.    Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

64.    Typicality:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Nissan.  The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective CVT and/or its components.  Furthermore, the factual bases of Nissan's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

65.    Commonality:  There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include the following:

1      (a)    Whether Class Vehicles suffer from defects relating to the
2             CVT;
3      (b)    Whether the defects relating to the CVT constitute an
4             unreasonable safety risk;
5      (c)    Whether Defendant knows about the defects pertaining to the
6             CVT and, if so, how long Defendant has known of the defect;
7      (d)    Whether the defective nature of the CVT constitutes a
8             material fact;
9      (e)    Whether Defendant has a duty to disclose the defective nature
10            of the CVT to Plaintiff and Class Members;
11     (f)    Whether Plaintiff and the other Class Members are entitled to
12            equitable relief, including a preliminary and/or permanent
13            injunction;
14     (g)    Whether Defendant knew or reasonably should have known of
15            the defects pertaining to the CVT before it sold and leased
16            Class Vehicles to Class Members;
17     (h)    Whether Defendant should be declared financially responsible
18            for notifying the Class Members of problems with the Class
19            Vehicles and for the costs and expenses of repairing and
20            replacing the defective CVT and/or its components;
21     (i)    Whether Defendant is obligated to inform Class Members of
22            their right to seek reimbursement for having paid to diagnose,
23            repair, or replace their defective CVT and/or its components;
24     (j)    Whether Defendant breached the implied warranty of
25            merchantability pursuant to the Magnuson-Moss Act; and
26     (k)    Whether Defendant breached the implied warranty of
27            merchantability pursuant to the Song-Beverly Act.
28

66.   <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and they intend to prosecute this action vigorously.

67.   <u>Predominance and Superiority</u>:  Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy or relief.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

## (Violation of California's Consumers Legal Remedies Act,
## California Civil Code § 1750, *et seq.*)

68.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

69.   Plaintiff brings this cause of action on behalf of themselves and the CLRA Sub-Class.

70.   Defendant is a "person" as defined by California Civil Code § 1761(c).

71.     Plaintiff and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

72.     By failing to disclose and concealing the defective nature of the CVT from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their CVT had characteristics and benefits that they do not have and represented that the Class Vehicles and their CVT were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

73.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

74.     Defendant knew that the Class Vehicles and their CVT suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

75.     As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' CVT and its components are substantially certain to fail before their expected useful life has run.

76.     Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the CVT and/or the associated repair costs because:

> (a)     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

(b)    Plaintiff and Class Members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

(c)    Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn of or discover the safety defect.

77.    In failing to disclose the defective nature of CVT, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

78.    The facts Defendant concealed from or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and Class Members known that the Class Vehicles' CVT was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

79.    Plaintiff and Class Members are reasonable consumers who do not expect the transmission installed in their vehicles to exhibit problems such as loss of power and premature failure.

80.    This is the reasonable and objective consumer expectation relating to a vehicle's transmission.

81.    As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as loss of power, premature wear, and frequent replacement or repair.

82.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

83.    Plaintiff and the Class are entitled to equitable relief.

84.    Plaintiff Leyva provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  If Defendant fails to provide appropriate relief for their violations of the CLRA within 30 days, Plaintiff will seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief Plaintiff seeks now.

<b>SECOND CAUSE OF ACTION</b>

<b>(Violation of California Business & Professions Code § 17200, <i>et seq.</i>)</b>

85.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

86.    Plaintiff brings this cause of action on behalf of themselves and the California Sub-Class.

87.    As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' CVT and/or its components are substantially certain to fail before their expected useful life has run.

88.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

89.    Plaintiff and Class Members are reasonable consumers who do not expect their transmission to exhibit problems such as loss of power, premature wear, and frequent replacement or repair.

90.    Defendant knew the Class Vehicles and their C, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

1       91.    In failing to disclose the CVT Defect, Defendant has knowingly and

2    intentionally concealed material facts and breached its duty not to do so.

3       92.    Defendant was under a duty to Plaintiff and Class Members to

4    disclose the defective nature of the Class Vehicles and their CVT because:

5               (a)    Defendant was in a superior position to know the true state of

6                      facts about the safety defect in the Class Vehicles' CVT; and

7               (b)    Defendant actively concealed the defective nature of the Class

8                      Vehicles and their CVT from Plaintiff and the Class.

9       93.    The facts Defendant concealed from or not disclosed to Plaintiff and

10   Class Members are material in that a reasonable person would have considered

11   them to be important in deciding whether to purchase or lease Class Vehicles.

12   Had they known that the Class Vehicles' CVT was defective and posed a safety

13   hazard, then Plaintiff and the other Class Members would have paid less for

14   Class Vehicles equipped with the CVT or would not have purchased or leased

15   them at all.

16      94.    Defendant continued to conceal the defective nature of the Class

17   Vehicles and their CVT even after Class Members began to report problems.

18      95.    Defendant's conduct was and is likely to deceive consumers.

19      96.    Defendant's acts, conduct, and practices were unlawful, in that they

20   constituted:

21             (a)    Violations of California's Consumers Legal Remedies Act;

22             (b)    Violations of the Song-Beverly Consumer Warranty Act;

23             (c)    Violations of the Magnuson-Moss Warranty Act.

24      97.    By its conduct, Defendant has engaged in unfair competition and

25   unlawful, unfair, and fraudulent business practices.

26      98.    Defendant's unfair or deceptive acts or practices occurred

27   repeatedly in Defendant's trade or business, and were capable of deceiving a

28

1  substantial portion of the purchasing public.

2       99.    As a direct and proximate result of Defendant's unfair and deceptive

3  practices, Plaintiff and Class Members have suffered and will continue to suffer

4  actual damages.

5       100.   Defendant has been unjustly enriched and should be required to

6  make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

7  Business & Professions Code.

8                    **THIRD CAUSE OF ACTION**

9              **(Breach of Implied Warranty Pursuant to Song-Beverly**

10  **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

11      101.   Plaintiff incorporates by reference the allegations contained in the

12  preceding paragraphs of this Complaint.

13      102.   Plaintiff brings this cause of action against Defendant on behalf of

14  themselves and the Implied Warranty Sub-Class.

15      103.   Defendant was at all relevant times the manufacturer, distributor,

16  warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

17  know of the specific use for which the Class Vehicles were purchased or leased.

18      104.   Defendant provided Plaintiff and Class Members with an implied

19  warranty that the Class Vehicles and their components and parts are

20  merchantable and fit for the ordinary purposes for which they were sold.

21  However, the Class Vehicles are not fit for their ordinary purpose of providing

22  reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

23  and their CVT suffered from an inherent defect at the time of sale and thereafter

24  and are not fit for their particular purpose of providing safe and reliable

25  transportation.

26      105.   Defendant impliedly warranted that the Class Vehicles were of

27  merchantable quality and fit for their intended use.  This implied warranty

28

included, among other things: (i) a warranty that the Class Vehicles and their CVT were manufactured, supplied, distributed, and/or sold by Nissan would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their CVT would be fit for their intended use.

106.   Contrary to the applicable implied warranties, the Class Vehicles and their CVT at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their CVT.

107.   The alleged CVT Defect is inherent and was present in each Class Vehicle at the time of sale.

108.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' CVT and/or its components are substantially certain to fail before their expected useful life has run.

109.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)

110.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

111.   Plaintiff brings this cause of action on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class.

1      112.   The Class Vehicles are a "consumer product" within the meaning of
2   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

3      113.   Plaintiff and Class Members are "consumers" within the meaning of
4   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

5      114.   Defendant is a "supplier" and "warrantor" within the meaning of the
6   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

7      115.   Nissan impliedly warranted that the Class Vehicles were of
8   merchantable quality and fit for use.  This implied warranty included, among
9   other things: (i) a warranty that the Class Vehicles and their CVT were
10   manufactured, supplied, distributed, and/or sold by Nissan would provide safe
11   and reliable transportation; and (ii) a warranty that the Class Vehicles and their
12   CVT would be fit for their intended use while the Class Vehicles were being
13   operated.

14      116.   Contrary to the applicable implied warranties, the Class Vehicles
15   and their CVTs at the time of sale and thereafter were not fit for their ordinary
16   and intended purpose of providing Plaintiff and Class Members with reliable,
17   durable, and safe transportation.  Instead, the Class Vehicles are defective,
18   including the defective design of their CVT.

19      117.   Defendant's breach of implied warranties has deprived Plaintiff and
20   Class Members of the benefit of their bargain.

21      118.   The amount in controversy of Plaintiff's individual claims meets or
22   exceeds the sum or value of $25,000.  In addition, the amount in controversy
23   meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)
24   computed on the basis of all claims to be determined in this suit.

25      119.   Defendant has been afforded a reasonable opportunity to cure its
26   breach, including when Plaintiff and Class Members brought their vehicles in for
27   diagnoses and repair of the CVT.

28

CLASS ACTION COMPLAINT

120.   As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

121.   As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff and Class Members have incurred damages.

**FIFTH CAUSE OF ACTION**

**(For Unjust Enrichment)**

122.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

123.   Plaintiff brings this cause of action on behalf of themselves and the Class.

124.   As a direct and proximate result of Defendant's failure to disclose known defects, Defendant has profited through the sale and lease of the Class Vehicles.  Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

125.   Additionally, as a direct and proximate result of Defendant's failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

126.   Defendant has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

1    127.   As a result of the Defendant's unjust enrichment, Plaintiff and Class

2    Members have suffered damages.

3                              **RELIEF REQUESTED**

4    128.   Plaintiff, on behalf of himself and all others similarly situated,

5    request the Court to enter judgment against Defendant, as follows:

6              (a)    An order certifying the proposed Class and Sub-Classes,

7                     designating Plaintiff as named representative of the Class, and

8                     designating the undersigned as Class Counsel;

9              (a)    A declaration that Defendant is financially responsible for

10                    notifying all Class Members about the defective nature of the

11                    CVT, including the need for periodic maintenance;

12             (b)    An order enjoining Defendant from further deceptive

13                    distribution, sales, and lease practices with respect to Class

14                    Vehicles; compelling Defendant to issue a voluntary recall for

15                    the Class Vehicles pursuant to.  49 U.S.C. § 30118(a);

16                    compelling Defendant to remove, repair, and/or replace the

17                    Class Vehicles' defective CVT and/or its components with

18                    suitable alternative product(s) that do not contain the defects

19                    alleged herein; enjoining Defendant from selling the Class

20                    Vehicles with the misleading information; and/or compelling

21                    Defendant to reform its warranty, in a manner deemed to be

22                    appropriate by the Court, to cover the injury alleged and to

23                    notify all Class Members that such warranty has been

24                    reformed;

25             (c)    A declaration requiring Defendant to comply with the various

26                    provisions of the Song-Beverly Act alleged herein and to

27                    make all the required disclosures;

28

(d)  An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)  Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(f)  Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(g)  A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiff and Class Members;

(h)  An award of attorneys' fees and costs, as allowed by law;

(i)  An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(j)  An award of pre-judgment and post-judgment interest, as provided by law;

(k)  Leave to amend the Complaint to conform to the evidence produced at trial; and

(l)  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

129.  Pursuant to Federal Rule of Civil Procedure 38(b) and Southern District of California Local Rule 38.1, Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated:  September 11, 2017          Respectfully submitted,

                                   Capstone Law APC


                              By: /s/ Jordan L. Lurie
                                  Jordan L. Lurie
                                  Tarek H. Zohdy
                                  Cody R. Padgett
                                  Karen L. Wallace

                                  Attorneys for Plaintiff

CLASS ACTION COMPLAINT

# EXHIBIT 1

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALDO LEYVA individually, and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation<br>    Defendant | Case No.:<br><br>**DECLARATION OF WALDO LEYVA IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE SECTION 1780(d)** |

## DECLARATION OF WALDO LEYVA

I, Waldo Levya, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.     I reside in San Jacinto, California, which is in the County of Riverside.  I purchased the vehicle that is the subject of this lawsuit in the County of Riverside.  I keep my vehicle in the County of Riverside and have my vehicle serviced and repaired in the County of Riverside.

4.     I am informed and believe that Defendant NISSAN NORTH AMERICA, INC. ("Defendant") is a California corporation, organized and existing under the laws of the State of California, and registered to conduct business in California.  On information and belief, Defendant conducts business in Los Angeles County.

5.     Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act because vehicles that are the subject of this lawsuit are situated here, and a substantial portion of the events giving rise to my claims occurred here.

6.     I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

DECLARATION ISO VENUE FOR CLASS ACTION COMPLAINT

Executed on September 9/9/2017, 2017 in San Jacinto, California.

DocuSigned by:

*Waldo Leyva*

Waldo Leyva

DECLARATION ISO VENUE FOR CLASS ACTION COMPLAINT